ESTADO LIBRE ASOCIADO DE PUERTO RICO
TRIBUNAL DE APELACIONES
PANEL ESPECIAL

| | | |
|---|---|---|
| MARITERE HERNÁNDEZ Y OTROS<br><br>Apelada<br><br>v.<br><br>ASOCIACIÓN DE TITULARES DEL CONDOMINIO QUANTUM METROCENTER, INC. Y OTROS<br><br>Apelantes | KLAN202100499<br><br><br>CONSOLIDADO<br><br>CON | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Sobre: Cobro de lo Indebido y Otros<br><br>Caso Número: SJ2017CV00209 |
| MARITERE HERNÁNDEZ Y OTROS<br><br>Apelantes<br><br>v.<br><br>ASOCIACIÓN DE TITULARES DEL CONDOMINIO QUANTUM METROCENTER, INC. Y OTROS<br><br>Apelados | KLAN202100502 | Apelación procedente del Tribunal de Primera Instancia, Sala de San Juan<br><br>Sobre: Cobro de lo Indebido y Otros<br><br>Caso Número: SJ2017CV00209 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, la Juez Álvarez Esnard y el Juez Ronda Del Toro

Domínguez Irizarry, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico a 27 de noviembre de 2023.

El Consejo de Titulares del Condominio Quantum Metrocenter (Consejo), comparece ante nos mediante el recurso de *Apelación* KLAN202100499, para que modifiquemos la *Sentencia Final* emitida por el Tribunal de Primera Instancia, Sala de San Juan, el 16 de abril de 2021. Por igual, comparecen la señora Maritere Hernández, su señor esposo, Alejandro Bellver y la Sociedad Legal de Gananciales compuesta por ambos (matrimonio Bellver-Hernández), mediante el recurso de *Apelación* KLAN202100502, solicitan la revocación de la *Sentencia* de referencia, a los fines de que

proveamos a su favor o, en la alternativa, de que concluyamos que existen hechos en controversia que hacen meritoria la disposición ordinaria del asunto en litigio.

Mediante la *Sentencia* apelada, el Tribunal de Primera Instancia, en lo pertinente, declaró *Con Lugar* una *Solicitud de Sentencia Sumaria Parcial* presentada por el Consejo y, en consecuencia, desestimó las causas de acción referentes a la impugnación de la Asamblea Extraordinaria del 16 de mayo de 2017, promovidas en la *Segunda Demanda Enmendada* presentada por el matrimonio Bellver-Hernández. Además, el Tribunal de Instancia negó conceder los remedios de temeridad y honorarios de abogado respectivamente solicitados por los comparecientes.

Por los fundamentos que expondremos a continuación, se modifica la sentencia apelada y, así, la misma se confirma.

**I**

Conforme surge, el Condominio Quantum Metrocenter (Condominio) es uno de uso mixto, compuesto de ciento sesenta (160) apartamientos residenciales, un (1) apartamiento comercial y diecinueve (19) estacionamientos individuales. El 23 de junio de 2016, el matrimonio Bellver-Hernández adquirió el apartamiento comercial.

El 24 de abril de 2017, el matrimonio Bellver-Hernández presentó una *Demanda y Petición de Injunction Preliminar y Permanente* contra el Consejo, los miembros de la Junta de Directores y el Comité de Arquitectura del Condominio en su carácter personal, así como en contra de Chubb Insurance Company of Puerto Rico. Dicha *Demanda* original contenía diez causas de acción, a saber: (1) solicitud de sentencia declaratoria que reconozca el uso y existencia del área comercial; (2) solicitud de sentencia declaratoria para que se declare que la demolición de dos paredes y la instalación de un portón y cinco rejillas de ventilación no debían someterse para la

aprobación del Consejo de Titulares; (3) reclamación en daños y perjuicios y en cobro de dinero; (4) solicitud de sentencia declaratoria para que se declare que la parte demandante tiene derecho a conectarse a las instalaciones comunales del Condominio, particularmente al generador eléctrico; (5) solicitud de orden para que se atienda la solicitud de la parte demandante para instalar un conducto para la extracción de aire caliente de condensadores del área comercial y para instalar una sexta rejilla de ventilación; (6) solicitud de orden para que la Junta de Directores produzca las actas de sus reuniones y ponga el cuaderno de minutas disponible en la oficina de Administración de Condominio; (7) impugnación de acuerdos alcanzados por el Consejo de Titulares mediante Asambleas celebradas el 22 de febrero de 2016 y 14 de marzo de 2017; (8) solicitud para que se imponga una multa a la Junta de Directores por no informarle al Consejo sobre el despido del Agente Administrador; (9) solicitud de sentencia declaratoria en torno a la contratación de la representante legal del Consejo de Titulares y; (10) solicitud de *injunction* preliminar y permanente para mantener las modificaciones hechas por el matrimonio Bellver-Hernández, hasta tanto se dilucidara el pleito.[1]

El 16 de mayo de 2017, poco después de presentada la *Demanda* original, el Consejo de Titulares celebró una Asamblea Extraordinaria. En esta, se consideraron las siguientes solicitudes del matrimonio Bellver-Hernández: (1) demolición de paredes exteriores del Condominio para la instalación de condensadores de aire acondicionado y un portón perforado; (2) apertura de paredes comunales para la instalación de unas rejillas de ventilación; (3) conexión del apartamiento comercial al generador eléctrico comunal; y, en la alternativa; (4) la posibilidad de proveer una

---

[1] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 1-175.

facilidad comunal para instalar un generador eléctrico que sirviera al apartamiento comercial.[2] Como resultado de esta Asamblea Extraordinaria, el Consejo votó expresamente en contra de cada una de estas solicitudes y rechazó todas las propuestas del matrimonio Bellver-Hernández.[3]

Así las cosas, el 2 de junio de 2017, el matrimonio Bellver-Hernández presentó una *Demanda Enmendada y Petición de Injunction.* En la misma, reprodujo las causas de acción promovidas en la demanda original, e incluyó un nuevo reclamo para impugnar los acuerdos alcanzados por el Consejo en la Asamblea Extraordinaria del 16 de mayo de 2017.[4]

Mediante *Resolución y Orden* emitida el 6 de junio de 2017, el Tribunal de Primera Instancia dispuso de varios de los asuntos sometidos por los comparecientes ante su consideración. En particular, *motu proprio*, desestimó la petición de *injunction* preliminar presentada por el matrimonio Bellver-Hernández, al resolver que, puesto que, en la Asamblea en cuestión, las solicitudes de alteración, remodelación y construcción propuestas por este fueron rechazadas por el Consejo, no había un *status quo* que mantener.[5] Ahora bien, el foro de origen dispuso que los Bellver-Hernández, aún tenían a su haber la reclamación de impugnación de los acuerdos alcanzados por el Consejo en la Asamblea Extraordinaria del 16 de mayo de 2017, conforme solicitado en la súplica de la *Demanda Enmendada.*[6]

En desacuerdo con la referida determinación, el matrimonio Bellver-Hernández acudió ante este Tribunal de Apelaciones, en virtud de un primer recurso de *certiorari* de denominación

---

[2] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 2336-2413, 2414-2437, 2437-2479, 2479-2494.

[3] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 2413, 2437, 2479, 2494.

[4] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 177-241.

[5] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 242-243.

[6] *Íd*; Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 244-246.

alfanumérica KLCE201701121. Mediante *Sentencia* del 8 de agosto de 2017, un Panel hermano confirmó la *Resolución y Orden* del 6 de junio de 2017.[7] En particular, coincidió plenamente con la conclusión del Tribunal de Primera Instancia en cuanto a que la discusión y el rechazo de las propuestas del matrimonio Bellver-Hernández ante el Consejo, tornó académica la audiencia de *injunction* preliminar. Además, concurrió con que no había *status quo* que proteger, ello, a la luz del rechazo expreso de las propuestas.[8] El referido dictamen advino final, firme e inapelable.

Entretanto, el 28 de junio de 2017, el Consejo presentó su *Contestación a Demanda Enmendada y Petición de Injunction Preliminar y Permanente* y una *Reconvención*.[9] En lo pertinente, arguyó que el matrimonio Bellver-Hernández alteró los elementos comunes del Condominio sin su anuencia y en violación de la Ley de Condominios, Ley Núm. 104 de 25 de junio de 1958, 31 LPRA sec. 1291 *et seq.*, la Escritura Matriz del Condominio Quantum Metrocenter (Escritura) y el Reglamento de Administración y Copropiedad (Reglamento). Al respecto, el Consejo sostuvo que dichas actuaciones afectaron la imagen y elementos comunes del Condominio. En consecuencia, solicitó la restitución de los mismos a su estado original. En la alternativa, el Consejo requirió que se le impusiera a los Bellver-Hernández un pago de $25,000 por concepto de los daños derivados de su conducta ilegal, o de aquella suma necesaria para devolver los elementos comunes a su estado original, o del monto aplicable para garantizar la seguridad de la estructura, cual fuese mayor. Además, el Consejo solicitó el desembolso de costas, gastos y honorarios de abogado.[10] El 15 de noviembre de 2017, el Consejo presentó una segunda enmienda a su alegación

---

[7] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 248-265.
[8] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 263.
[9] Apéndice recurso de *Apelación* Enmendado KLAN202100499, pág. 241.
[10] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 342-343.

responsiva. En la misma, se reiteró en el petitorio de su *Reconvención* y, a su vez, añadió una demanda contra tercero.[11]

Tras varias incidencias, el 26 de enero de 2018, el matrimonio Bellver-Hernández presentó una *Segunda Demanda Enmendada y Petición de Injunction Permanente.*[12] Si bien, en términos generales, los remedios solicitados en la demanda original permanecieron inalterados, los Bellver-Hernández enmendaron su cuarta causa de acción, a los fines de solicitar que se proveyera para que se les permitiera el uso de la cisterna comunal del Condominio. De igual modo, modificaron, en parte la quinta y séptima causa de acción, ello en el ánimo de consignar la expresa impugnación de los acuerdos de la Asamblea Extraordinaria del 16 de mayo de 2017. El 13 de junio de 2018, el Consejo presentó *Contestación a Segunda Demanda y Petición de Injunction Preliminar y Permanente.*[13] En el pliego, ratificó su previa postura, ello, en cuanto a negar la procedencia de las alegaciones del matrimonio Bellver-Hernández. En particular, sobre la enmienda incluida a la cuarta causa de acción, expusieron que, si el apartamiento comercial del matrimonio Bellver-Hernández "no es[taba] conectado al generador [eléctrico] ni a la cisterna, [era] porque así lo diseñaron".[14] El Consejo nada reprodujo sobre los méritos de su *Reconvención.*

Luego de múltiples trámites, entre ellas, varias solicitudes de desestimación incoadas por las partes codemandadas en el pleito, el 2 de noviembre de 2018, el Tribunal de Primera Instancia emitió una *Sentencia Parcial* mediante la cual desestimó, en su totalidad, la primera, segunda, tercera, cuarta, sexta, octava, novena y décima causas de acción según contenidas en la *Segunda Demanda*

---

[11] El Consejo presentó demanda contra tercero contra QMC Holdings, LLC. Alegó que esta última incumplió con el artículo 14-B de la Ley de Condominios al venderle varios estacionamientos al matrimonio Bellver-Hernández. Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 266, 369-372.

[12] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 373-437.

[13] Apéndice recurso de Apelación KLAN202100499, págs. 1657-1751.

[14] Apéndice recurso de Apelación KLAN202100499, pág. 1706.

*Enmendada y Petición de Injunction Permanente*[15]. En esencia, al comparar los remedios solicitados con el contenido de aquellos reclamados en la *Demanda* original, el tribunal sentenciador dispuso que las referidas alegaciones constituían cosa juzgada, ello a tenor con lo resuelto mediante la *Resolución y Orden* del 6 de junio de 2017, dictamen debidamente confirmado por este Foro. Según expresó, en virtud del referido pronunciamiento, se concluyó que las alegaciones relativas a las mejoras del apartamiento comercial y a la solicitud de conexión a la planta eléctrica comunal, se habían tornado académicas, tras haber sido denegadas por el Consejo de Titulares en la Asamblea Extraordinaria del 16 de mayo de 2017. A su vez, el Tribunal de Primera Instancia añadió que, aun tomando como ciertas las alegaciones de la *Segunda Demanda Enmendada,* conjuntamente con los documentos anejados en apoyo al pliego, los demandantes no tenían derecho a la concesión de un remedio, ello a tenor con la Regla 10.3 de Procedimiento Civil, 32 LPRA Ap. V, R. 10.3. Así, pues, toda vez lo anterior, únicamente subsistieron la quinta y séptima causas de acción, a saber:

> [...]
>
> (5) Impugnación de acuerdos alcanzados el día 16 de mayo de 2017 para instalar un conducto para la extracción de aire caliente de condensadoras del área comercial y una sexta rejilla de ventilación e;
>
> [...]
>
> (7) Impugnación de acuerdos en asambleas e imposición de multas
> a. Nulidad de Asamblea celebrada el día 22 de febrero de 2016.
> b. Nulidad de la Asamblea celebrada el día 14 de marzo de 2017.
> c. Improcedentes los "Acuerdos" notificados el 1 de junio de 2017 [resueltos en la Asamblea Extraordinaria del 16 de mayo de 2017].
>
> [...].[16]

---

[15] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 467-496.
[16] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 409 y 413.

Poco después, el 15 de noviembre de 2018, el Consejo presentó un documento intitulado *Solicitud de Desestimación Parcial de la Séptima Causa de Acción de la Segunda Demanda Enmendada, re: Asamblea del 14 de marzo de 2017.*[17] En esencia, planteó que la impugnación del matrimonio Bellver-Hernández respecto a los acuerdos tomados en la Asamblea del 14 de marzo de 2017, se fundamentaba en el hecho de que, en la misma, los titulares de otra unidad, presentaron un proyecto de mejoras que fue aprobado. El Consejo sostuvo que, ante ello, los Bellver-Hernández alegaron que se les privó de presentar sus propuestas para que también fueran consideradas en la asamblea de referencia. Al abundar, indicó, además, que, previo a que culminara la Asamblea de referencia, los Bellver-Hernández voluntariamente se retiraron de la misma, hecho que les impedía oponerse a lo allí resuelto. A su vez, en aras de sostener su contención, el Consejo expuso que, aun de entenderse que el matrimonio Bellver-Hernández era acreedor de algún remedio en ley, el mismo se tornó académico cuando, en la Asamblea del 16 de mayo de 2017, su proyecto fue discutido y eventualmente rechazado. Así, solicitó al Tribunal de Primera Instancia que desestimara parcialmente la séptima causa de acción promovida por el matrimonio Bellver-Hernández en su *Segunda Demanda Enmendada,* ello en torno a la impugnación de los acuerdos de la Asamblea del 14 de marzo de 2017.

En respuesta, el 3 de diciembre de 2018, el matrimonio Bellver-Hernández presentó su *Oposición a "Solicitud de Desestimación Parcial de la Séptima Causa de Acción de la Segunda Demanda Enmendada, re: Asamblea del 14 de marzo de 2017".* Específicamente, argumentó que la figura de la academicidad no era oponible a su petitorio.

---

[17] Apéndice recurso de *Apelación* Enmendado KLAN202100502, pág. 497-508.

Días más tarde, el 30 de noviembre de 2018, el Tribunal de Primera Instancia emitió una segunda *Sentencia Parcial.* En virtud de la misma, desestimó la séptima causa de acción, ello solo en cuanto a la impugnación de los acuerdos tomados en la Asamblea del 22 de febrero de 2016, bajo el fundamento de falta de legitimación activa. En particular, tras acoger los argumentos del Consejo, según esbozados en una previa e independiente moción de desestimación, el foro primario resolvió que, para la fecha de la antedicha Asamblea, los Bellver-Hernández no eran titulares del inmueble objeto de litigio.

De otro lado, y luego de que, inconforme con la *Sentencia Parcial* del 2 de noviembre de 2018, el matrimonio Bellver-Hernández compareciera ante este Foro mediante el recurso de apelación KLAN201801326, el 4 de abril de 2019, un Panel hermano modificó el referido dictamen y, así, lo confirmó. En lo atinente, resolvió que, tal cual dispuesto por el tribunal de origen, los remedios solicitados por el matrimonio Bellver-Hernández ya habían sido adjudicados en la Asamblea Extraordinaria del 16 de mayo de 2017, por lo que, constituyendo cosa juzgada, nada podía disponerse en cuanto a los mismos. Así, resolvió que la desestimación resuelta por el Tribunal de Primera Instancia constituyó un quehacer adjudicativo correcto. No obstante, este Tribunal modificó lo resuelto respecto a la cuarta causa de acción promovida por el matrimonio Bellver-Hernández en su *Segunda Demanda Enmendada y Petición de Injunction Permanente*, ello en cuanto a la solicitud relativa al uso de la planta eléctrica y la cisterna comunal. Sobre dicho particular, reiteró que, dado a que la controversia relativa a la conexión de la planta eléctrica ya había sido dirimida en la Asamblea Extraordinaria de referencia, dicho asunto también constituía cosa juzgada. Sin embargo, en consideración a que la solicitud para conectar el apartamiento

comercial en disputa a la cisterna comunal del Condominio se presentó con posterioridad y no había sido atendida, ordenó que dicho asunto se discutiera en la próxima reunión del Consejo.[18] Tanto la *Sentencia Parcial* del 2 de noviembre de 2018 emitida por el Tribunal de Primera Instancia, como la *Sentencia* en apelación del 4 de abril de 2019, advinieron finales y firmes. De este modo, la cuestión entre las partes se redujo a la consideración de la conexión del apartamiento a la cisterna, ello en los términos resueltos, y a la impugnación de los acuerdos alcanzados en las asambleas celebradas el 22 de febrero de 2016, el 14 de marzo de 2017 y el 16 de mayo de 2017.

Así las cosas, y luego de acontecidos varios trámites, el 26 de junio de 2019, mediante *Sentencia* en el recurso de apelación KLAN201900032, según promovido por el matrimonio Bellver-Hernández, este Tribunal confirmó la *Sentencia Parcial* del 30 de noviembre de 2018.[19] Así, sostuvo la determinación por la cual se desestimó la séptima causa de acción, en cuanto a la impugnación de los acuerdos tomados en la Asamblea del 22 de febrero de 2016. En su determinación, el Panel hermano suscribiente, en referencia a las controversias restantes entre las partes de epígrafe, se expresó como sigue:

> [U]na revisión cuidadosa del abultado, repetitivo y confuso trámite procesal del caso de epígrafe revela que el pleito presentado por [el matrimonio Bellver-Hernández] se ha ido desinflando y que sin lugar a dudas queda pendiente por resolver, como correctamente identificó el TPI, la impugnación de los acuerdos de la Asamblea Extraordinaria del Consejo de Titulares de 16 de mayo de 2017, en la que se rechazaron los acuerdos propuestos por [el matrimonio Bellver-Hernández].[20]

Destacamos que, en la sentencia en apelación de referencia, este Foro, en su nota al calce núm. 26, expresamente dispuso que,

---

[18] Apéndice recurso de *Apelación* Enmendado KLAN202100502, pág. 544.
[19] Véase Apéndice recurso KLAN202100499, págs. 1883-1895.
[20] *Íd.*, págs. 1894-1895.

dado a que el dictamen que revisó, nada expresó en torno a la impugnación de los Acuerdos de la Asamblea del 14 de marzo de 2017, resultaba improcedente pronunciarse al respecto. Por tanto, la *Solicitud de Desestimación Parcial de la Séptima Causa de Acción de la Segunda Demanda Enmendada, re: Asamblea del 14 de marzo de 2017*, quedó pendiente de adjudicación.

Así las cosas, el 9 de abril de 2020, matrimonio Bellver-Hernández presentó una *Moción Solicitando Desestimación de la Reconvención Enmendada por Falta de Jurisdicción.* En el pliego indicó que, dado a que en su *Contestación a Segunda Demanda y Petición de Injunction Preliminar y Permanente*, el Consejo nada mencionó sobre las alegaciones de su *Reconvención*, debía entenderse la misma como renunciada y, por ende, como académica. Específicamente, expuso que el Consejo abandonó su causa de acción al no aludir a la misma en la alegación responsiva que presentó respecto a la *Segunda Demanda Enmendada*, hecho que le impedía obtener remedio alguno a su favor.

Poco después, el 10 de julio de 2020, el Consejo presentó una *Solicitud de Sentencia Sumaria Parcial*.[21] En esta, arguyó que no existía controversia de hechos alguna sobre que, contrario a lo aducido en las quinta y séptima causas de acción de la demanda de epígrafe, la Asamblea Extraordinaria del 16 de mayo de 2017, cumplió con todas las exigencias procesales y sustantivas de la Ley de Condominios, *supra*, y del Reglamento, ello a fin de que se sostuvieran los acuerdos alcanzados en la misma. Al abundar, expuso que los argumentos de impugnación del matrimonio Bellver-Hernández, planteaban un alegado incumplimiento con las formalidades de ley para validar la convocatoria, celebración y toma de acuerdos en la Asamblea en disputa, así como que, las

---

[21] Apéndice recurso de *Apelación* Enmendado KLAN202100502, pág. 592.

determinaciones por las cuales sus propuestas de remodelación y construcción se rechazaron, fueron producto de actuaciones arbitrarias, caprichosas y represivas atribuibles al Consejo. No obstante, planteó que los mismos no se sostenían en derecho ni en los hechos incontrovertidos.

Al particularizar su contención, el Consejo expuso que, a la luz de la escritura matriz del Condominio, no estaba en disputa el hecho de que el matrimonio Bellver-Hernández adquirió la unidad en el Condominio, a sabiendas de que la misma no tenía conexión a la cisterna y ni al generador eléctrico del Condominio. En específico, sobre la petición de conexión al generador de referencia, expuso que la misma era improcedente, no solo por razón de la naturaleza del apartamiento, sino, también, porque ello implicaba una modificación a un elemento común, lo cual requería una aprobación unánime del Consejo. Añadió, a su vez, que, en la alternativa, debía considerarse el hecho de que el apartamiento comercial de los Bellver-Hernández se aprovecha del generador eléctrico, al este servir a las áreas comunes de ambas torres del Condominio. De igual forma, el Consejo indicó que tampoco existía controversia en cuanto a que los Bellver-Hernández, sin el consentimiento previo, expreso y unánime del Consejo, y con conocimiento de que constituía un acto al margen de la ley, demolieron paredes comunales, alterando, así, la fachada del Condominio. Al respecto, el Consejo sostuvo que, en múltiples ocasiones, y de manera extrajudicial, se les solicitó restituir los elementos acomunes afectados a su estado original. No obstante, afirmó que el matrimonio Bellver-Hernández, lejos de cumplir con ello, continuó persistiendo en sus actuaciones ilegítimas.

Sobre lo acontecido durante la Asamblea Extraordinaria del 16 de mayo de 2017, el Consejo se reiteró en que ninguna de las propuestas del matrimonio Bellver-Hernández fue acogida, luego de

que las mismas fueran debidamente expuestas. Sobre este particular, y a fin de derrotar las imputaciones en su contra, indicó que, de la prueba documental anejada al pliego, particularmente de la transcripción oral de la Asamblea, surgía que los procesos durante la misma se llevaron a cabo de conformidad con las exigencias legales y reglamentarias pertinentes. Al amparo de dicha afirmación, el Consejo expresó que la convocatoria a la Asamblea se efectuó dentro del término legal dispuesto y gozó de la suficiencia requerida, ello en cuanto a su contenido. Específicamente, indicó que la convocatoria de la Asamblea dio la publicidad necesaria a los asuntos a discutirse, la consideración de la apertura y demolición de paredes comunales para la instalación de rejillas de ventilación, un portón y condensadores de aire, así como, también, la conexión del apartamiento en controversia al generador eléctrico. Al proseguir en sus argumentos a favor de la validez de la Asamblea, el Consejo, de igual modo, indicó que, durante la misma, se cumplió con el quorum reglamentario de participación requerido, que el matrimonio Bellver-Hernández tuvo amplia oportunidad de explicar los pormenores de sus propuestas, que las oposiciones respecto a las mismas estuvieron debidamente fundamentadas y que los acuerdos alcanzados fueron notificados conforme a ley. De este modo, el Consejo sostuvo que, dado a que la prueba documental apoyaba la veracidad de sus argumentos, correspondía determinarse que no medió conducta arbitraria, caprichosa ni represiva alguna en contra de los Bellver-Hernández al momento de rechazarse sus propuestas.

En su moción, el Consejo también afirmó que, toda vez la conducta del matrimonio Bellver-Hernández, según establecida por la prueba, no existía controversia de hechos en cuanto a que la misma era una constitutiva de temeridad y sujeta a las sanciones establecidas por el ordenamiento. Al abundar sobre dicho aspecto,

indicó que las constantes violaciones legales y reglamentarias atribuibles a los Bellver-Hernández, lo obligaron a requerir, mediante reconvención, la intervención de los tribunales para poder mitigar los daños causados por las mismas. Sobre dicho particular, destacó su previa postura en cuanto a que los Bellver-Hernández conocían de la ilegalidad de sus actos al alterar los elementos comunes del Condominio mediante remodelaciones y demoliciones no autorizadas. Añadió que fueron estos quienes, al solicitársele, extrajudicialmente, que devolvieran las paredes comunales afectadas a su estado original, requirieron la celebración de una asamblea para que se evaluaran las propuestas que finalmente se atendieron en la Asamblea Extraordinaria, por lo que la impugnación judicial de los acuerdos resueltos, conjuntamente con la ilegalidad de sus acciones, evidenciaba su contumacia. Así pues, a tenor con todo lo expuesto en su *Solicitud de Sentencia Sumaria Parcial*, el Consejo requirió que se declararan *No Ha Lugar* la impugnación de los acuerdos de la Asamblea Extraordinaria del 16 de mayo de 2017, según lo expuesto en las quinta y séptima causas de acción de la demanda de epígrafe y se ordenara al matrimonio Bellver-Hernández restituir los elementos comunes modificados a su estado original. Igualmente, el Consejo solicitó al Tribunal de Primera Instancia resolver que los Bellver-Hernández actuaron con temeridad y, en consecuencia, que les impusiera la obligación de restituir los honorarios y gastos ocasionados al Consejo, todo en virtud de lo dispuesto en el Artículo 11.10 del Reglamento, o, en la alternativa, el pago de una suma por los honorarios realmente incurridos, no menor de $50,000, todo a tenor con el Artículo 42(e) de la Ley de Condominios, *supra.*[22]

---

[22] El Consejo acompañó su *Solicitud de Sentencia Sumaria Parcial* con la siguiente prueba documental: Escritura Matriz del Condominio Quantum Metrocenter; Reglamento de Administración y Copropiedad del Condominio; Declaración Jurada del Sr. Kevin González Toro; Carta dirigida al Lcdo. Alejandro Bellver Espinoza de parte de la Oficina de Administración; Carta dirigida a la Junta del Consejo de

El 30 de noviembre de 2020, el matrimonio Bellver-Hernández presentó su *Oposición a Moción de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria a Favor de los Demandantes.*[23] Arguyó que la moción dispositiva del Consejo era improcedente en derecho, toda vez que los alegados hechos no controvertidos se fundamentaban en prueba inadmisible. Específicamente, indicó que el Consejo apoyó su postura en el contenido de una transcripción de los procedimientos de la Asamblea Extraordinaria objeto de impugnación, la cual sostuvo que era prueba de referencia inadmisible. Además, argumentó que la referida prueba no podía intimarse como un récord de negocio admisible por excepción, toda vez que, se preparó con el solo propósito de ser utilizada en el litigio de autos. Igual señalamiento empleó respecto al Acta de la Asamblea Extraordinaria del 16 de mayo de 2017, a la Lista de Asistencia a la misma, y las *Minutas* de reuniones previas de la Junta de Directores, en las cuales se dialogó el alcance de las propuestas en disputa.

Ahora bien, en sus argumentos de oposición, los Bellver-Hernández sostuvieron que, como alternativa, de entenderse que la transcripción de los procedimientos de referencia era admisible, la misma no acreditaba el cumplimiento con las leyes y los reglamentos aplicables para validar los acuerdos alcanzados respecto al rechazo de sus propuestas. En específico, indicó que de la transcripción podía advertirse que las oposiciones a su proyecto no estuvieron

---

Titulares de parte del Lcdo. Alejandro Bellver Espinoza; Convocatoria Reunión de Junta de Directores de 28 de marzo de 2017; Minuta de Reunión de Junta de Directores celebrada el 27 de marzo de 2017; Carta del Lcdo. Ángel R. Rivera De La Cruz dirigida al Administrador del Condominio Quantum Metrocenter; Carta dirigida al Lcdo. Alejandro Bellver Espinoza; Minuta Reunión de Junta de Directores celebrada el 11 de abril de 2017; Carta dirigida a Junta de Directores del Consejo de Titulares de 11 de abril de 2017; Reporte de Evaluación de Condiciones Actuales de la Subestación y el Generador existentes; Reporte pericial del Ing. Juan Requena; Recordatorio Junta de Directores; Minuta Junta de Directores de 27 de abril de 2017; Convocatoria Asamblea Extraordinaria a celebrarse el 16 de mayo de 2017; Comunicación de Acción Civil contra el Consejo de Titulares; Acta de Asamblea de 16 de mayo de 2017; Lista de Asistencia de Asamblea de 16 de mayo de 2017; Notificación de Acuerdos de Asamblea Ordinaria 2017; Transcripción de Minuta de Asamblea de 16 de mayo de 2017; Fotografías de las alternaciones; copia del *Ground Level Floor Ventilation Plan.*
[23] Apéndice recurso de *Apelación* Enmendado KLAN202100502, pág. 1219.

debidamente fundamentadas, hecho que derrotaba la ausencia de controversia de hechos aducida.

De igual modo, el matrimonio Bellver-Hernández planteó que también surgía que los trabajos en la Asamblea estuvieron revestidos de motivaciones en su contra, así como de información confusa para los titulares, lo que impidió una consideración fundamentada de su proyecto. En particular, indicó que existía una genuina disputa en cuanto a que no se les permitió acreditar su cumplimiento con los requisitos establecidos por el Comité de Arquitectura y la Junta de Directores, ni exponer que sus propuestas contaban con la anuencia de los referidos organismos. Igualmente, el matrimonio Bellver-Hernández afirmó que la prueba documental sometida por el Consejo tampoco respaldaba la procedencia de las alegaciones sobre daños aducidas en la *Reconvención.*

En el pliego, el matrimonio Bellver-Hernández incluyó una solicitud de sentencia sumaria a su favor. En específico, peticionó que se declararan *Con Lugar* la cuarta, quinta y séptima causa de acción, según expuestas en la demanda de autos, así como que se proveyera para la desestimación de la *Reconvención* promovida en su contra. En su exposición, reputó como incontrovertible el hecho de que la Asamblea Extraordinaria del 16 de mayo de 2017 se efectuó mediando múltiples incumplimientos legales y reglamentarios que, a su juicio, anulaban lo allí resuelto. Al abundar, sostuvo que no existía controversia de hechos en cuanto a que la convocatoria pertinente fue una defectuosa, por haberse efectuado sin su conocimiento, sin cumplir con las exigencias procesales aplicables e incluyendo información errónea respecto a los asuntos por discutirse. Añadió que, de igual modo, la notificación de los acuerdos allí alcanzados también incumplió con los requisitos

pertinentes para su validación, por no haber sido notificados oportunamente.

Ahora bien, al expresarse en torno a lo específicamente acontecido en la Asamblea, el matrimonio Bellver-Hernández reprodujo su contención en cuanto a que el proceso fue uno adverso en su contra. Sobre dicho particular afirmó que, de conformidad con la prueba, surgía que se indujo a error a los titulares, ello en cuanto al alcance de sus propuestas de construcción y remodelación. En esencia, expresó que su proyecto respecto al apartamiento comercial en disputa ya había sido discutido con el Comité de Arquitectura del Condominio y con la Junta de Directores, por lo que, tras contar con su aval, se comenzó la ejecución del mismo mediante la demolición de ciertas paredes. Al amparo de ello, los Bellver-Hernández indicaron que el asunto debió haberse sometido ante los titulares presentes en la Asamblea, como uno para propósitos de ratificación de un proyecto ya iniciado, por haber sido considerado de la Junta de Directores y el Comité de Arquitectura. Sin embargo, sostuvieron que, lejos de ello, se planteó como una demolición no autorizada de paredes comunales, hecho que los predispuso en su contra. A su vez, añadieron que, dado a que la Asamblea en disputa se efectuó después de la presentación de la demanda original del presente caso, se aludió a su condición de demandantes en el pleito, lo que también influyó en que sus propuestas no recibieran respaldo.

En su petitorio, el matrimonio Bellver-Hernández también expuso que procedía decretarse la nulidad de la Asamblea celebrada el 14 de marzo de 2017, ello conforme expuesto en la séptima causa de acción de su demanda. En cuanto a este particular, arguyó que los acuerdos resultantes de la misma, particularmente, la autorización de la remodelación de una de las unidades del Condominio, fueron producto de una convocatoria defectuosa y de la falta del quórum legal requerido. En cuanto a este asunto, destacó

que dado a que desconocía que la remodelación de referencia habría de ser objeto de discusión en dicha asamblea, se vio impedido de, durante la misma, presentar ante los titulares los términos de su proyecto para que fuera considerado.

Así, a tenor con todo lo antes expuesto, el matrimonio Bellver-Hernández solicitó al Tribunal de Primera Instancia que dictara sentencia sumaria a su favor, a los efectos de desestimar la causa de acción sobre daños promovida en su contra mediante reconvención. A su vez, solicitó que se declararan *Con Lugar* las cuarta, quinta y séptima causas de acción de la demanda de epígrafe, ello en cuanto a: 1) proveer para la conexión del apartamiento comercial a la cisterna comunal del Condominio; 2) decretar la nulidad de los acuerdos de la Asamblea del 16 de mayo de 2017 y, en consecuencia, permitirle la instalación de los condensadores de aire, del portón y de las rejillas de ventilación proyectados en su construcción, así como la conexión de la unidad al generador eléctrico comunal y; 3) decretar la nulidad de la Asamblea celebrada el 14 de marzo de 2017, así como la notificación de los acuerdos de la Asamblea Extraordinaria del 16 de mayo de 2017, con fecha del 1 de junio de 2017. Igualmente, los Bellver-Hernández solicitaron que se decretara la inadmisibilidad en evidencia de la transcripción de los procedimientos de la Asamblea del 16 de mayo de 2017, el Acta y del Listado de Titulares presentes, y de las Minutas de las reuniones previas de la Junta de Directores. Finalmente, el matrimonio Bellver-Hernández solicitó al Tribunal de Primera Instancia que resolviera la temeridad del Consejo y, como resultado, le impusiera el pago de los honorarios de abogado y gastos aplicables.[24] Entendemos menester destacar que, pese a que

---

[24] El matrimonio Bellver-Hernández acompañó su *Oposición a Moción de Sentencia Sumaria Parcial y Solicitud de Sentencia Sumaria a Favor de los Demandantes* con la siguiente prueba documental: 1) Declaración Jurada de Alejandro Bellver con sus respectivos anejos; 2) Transcripción de deposición del señor Américo Delgado; 3) Transcripción de deposición del señor Orlando

el matrimonio Bellver-Hernández afirmó que la transcripción de los procedimientos de la Asamblea en disputa no era admisible en evidencia, hizo referencia a la misma para sustentar sus contenciones.

Así las cosas, el 5 de febrero de 2021, el Consejo presentó su *Réplica a "Oposición a Moción de Sentencia Sumaria Parcial"* y su *Oposición a "Solicitud de Sentencia a favor de los Demandantes"*.[25] En esencia, arguyó que el matrimonio Bellver-Hernández no controvirtió de manera, real, sustancial y genuina los hechos propuestos en su *Solicitud de Sentencia Sumaria Parcial,* toda vez que no presentaron contradeclaraciones ni evidencia admisible que permitiera establecer controversia alguna respecto a sus argumentos. Añadió, a su vez, que los planteamientos de los Bellver-Hernández estaban fundados en hechos impertinentes a la verdadera disputa entre las partes. Igualmente, atinente a la disputa de autos, el Consejo señaló que, contrario a lo aducido por los Bellver-Hernández, la impugnación de la Asamblea Extraordinaria del 16 de mayo de 2017 era improcedente, toda vez que su prueba estableció que la misma se efectuó de conformidad con las exigencias establecidas en el Reglamento y aquellas estatuidas en el Artículo 38C de la Ley de Condominios, *supra.*[26] En principio, para sustentar su postura, el Consejo afirmó que los Bellver-Hernández,

---

Hernández Arroyo; 4) Transcripción de deposición de señor Jeshua Rivera Mercado; 5) Transcripción de deposición del presidente de la Junta de Directores del Condominio, señor Kevin González Toro; 6) Formulario de Titulares; 7) copia de Interrogatorio, Contestación a Interrogatorio, objeciones, contestación a objeciones, y Contestación Suplementaria; 8) Certificación del Municipio; 9) Expediente presentado ante la Oficina de Permisos del Municipio de San Juan relacionado a la remodelación del Apartamiento PH2601; 10) Informe de la Ingeniero Mildred Pérez; 11) Expediente del Condominio sobre remodelación del Apartamiento PH2601; 12) *Ageing Report* de la Asamblea del 14 de marzo de 2017; 13) Lista de asistencia de Asamblea del 14 de marzo de 2017; Informe del Ingeniero Juan Requena; 14) Copia de correos electrónico intitulados: "Solicitud Formal de Conexión a la Cisterna", fechados 22 de diciembre de 2017.

[25] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 5217, 5155.

[26] El inciso (d) del Artículo 38-C de la Ley de Condominios establece que: "La oposición a un acuerdo que requiera unanimidad, deberá fundamentarse expresamente, bien en la asamblea o por escrito, según se dispone en el párrafo anterior, y en ningún caso podrá basarse en el capricho o en la mera invocación del derecho de propiedad. La oposición infundada se tendrá por no puesta". 31 LPRA sec. 1293b-3.

a pesar de estar presentes en el Asamblea en cuestión, ni impugnaron los acuerdos, ni actuaron de conformidad dentro del plazo provisto por ley para ello. A su vez, el Consejo destacó que la *Sentencia* dictada por el Tribunal de Apelaciones el 4 de abril de 2019, sostuvo la validez de los acuerdos objeto de litigio, ello en cuanto al rechazo de las propuestas del matrimonio Bellver-Hernández para modificar elementos comunes del Condominio. Así, reafirmó que, la nulidad solicitada, no encontraba respaldo en los hechos establecidos ni en el derecho aplicable. Del mismo modo, el Consejo también expresó que tampoco eran procedentes las alegaciones sobre la inadmisibilidad en evidencia de la Transcripción, el Acta y la Lista de Titulares de la Asamblea Extraordinaria del 16 de mayo de 2017, así como de las Minutas de las reuniones de la Junta de Directores. Al respecto, expuso que dicha prueba documental ya había sido considerada y admitida por el Tribunal de Primera Instancia y por este Foro para resolver previas controversias entre las partes.[27] A su vez, indicó que los referidos documentos no se presentaron a los fines de demostrar la verdad de lo aseverado, sino, para establecer la validez, o no, del proyecto de construcción del matrimonio Bellver-Hernández. Al proseguir, el Consejo también expresó que, en la alternativa, la admisibilidad de la transcripción de los procedimientos en controversia, distinto al raciocinio del matrimonio Bellver-Hernández, se sustentaba vía la excepción de *Récord de actividades que se realizan con regularidad,* contenida en la Regla 805 (F) de Evidencia, 32 LPRA Ap. VI, R. 805.[28] El Consejo también apuntó el hecho de que el matrimonio Bellver-Hernández utilizó porciones de la Transcripción que impugnaba para apoyar los hechos

---

[27] Véase *Hernández v. Consejo De Titulares Del Condominio Quantum Metrocenter*, KLAN201801326.
[28] Apéndice recurso de *Apelación* Enmendado KLAN202100502, págs. 5396-5399.

alegadamente no controvertidos expuestos en su solicitud, contradicción que le impedía prevalecer en su pretensión.

El Consejo se reafirmó en que los Bellver-Hernández conocían que su proyecto de construcción requería la aprobación del Consejo de Titulares y que, aun así, demolieron y alteraron elementos comunes del Condominio sin contar con la anuencia debida. Al abundar, expuso que estos pretendían validar la ilegitimidad de sus actos, ello al argumentar que, tanto el Comité de Arquitectura, como la Junta de Directores, conocían y autorizaron su proyecto. Sin embargo, el Consejo se reafirmó en que dichos organismos no constituían la autoridad máxima del Condominio, por lo que estaban impedidos de oponer dicha instancia a su favor. A su vez, el Consejo nuevamente reprodujo su contención en cuanto a que el matrimonio Bellver-Hernández conocía la descripción específica y las características de la unidad comercial en controversia y, aun así, consintió su adquisición. De este modo, solicitó al Tribunal de Primera Instancia declarar *No Ha Lugar* los remedios peticionados por el matrimonio Bellver-Hernández y proveer para que este restituyera los elementos comunes afectados a su estado original. Igualmente, el Consejo se reiteró en su previa súplica, ello en cuanto a imponer a los Bellver-Hernández el pago de los honorarios y gastos del pleito, en virtud de lo dispuesto en el Reglamento del Condominio o, en la alternativa, el pago de una suma de dinero razonable por dicho concepto, según lo dispuesto en la Ley de Condominios, *supra.*

El 17 de febrero de 2021, el matrimonio Bellver-Hernández presentó su *Réplica y Análisis de Oposición a Moción de Sentencia Sumaria de los Demandantes*.[29] En lo atinente, esbozó argumentos sobre la inadmisibilidad en evidencia de la prueba documental propuesta por el Consejo, y reiteró que la misma se preparó,

---

[29] Apéndice recurso de *Apelación* Enmendado KLAN202100502, pág. 5479.

exclusivamente, para fines del litigio de epígrafe. Así, tras manifestar que el Consejo no logró controvertir los hechos expuestos en su solicitud sobre sentencia a su favor, el matrimonio Bellver-Hernández se reiteró en que se adjudicara el pleito a tenor con sus requerimientos.

Luego de varias incidencias procesales, el 16 de abril de 2021, el Tribunal de Primera Instancia emitió la *Sentencia* que nos ocupa, adjudicando, en virtud de la misma, lo siguiente: *Moción de Desestimación de la Reconvención Enmendada por Falta de Jurisdicción,* presentada el 4 de septiembre de 2020 por el matrimonio Bellver-Hernández; la *Solicitud de Desestimación Parcial de la Séptima Causa de Acción de la Segunda Demanda Enmendada, re: Asamblea del 14 de marzo de 2017* presentada el 15 de noviembre de 2018 por el Consejo; la *Solicitud de Sentencia Sumaria Parcial* presentada el 10 de julio de 2020 por el Consejo; y la *Solicitud de Sentencia a favor de los Demandantes,* presentada el 30 de noviembre de 2020 por el matrimonio Bellver-Hernández. Tras entender sobre las mociones dispositivas en controversia y toda la prueba documental sometida a su consideración, el foro primario concluyó que, ante sí, se estableció que el Consejo rechazó, mediante voto mayoritario, y a la luz de un proceso válido, las solicitudes de demolición, instalación de aires acondicionado y conexión al generador eléctrico comunal del matrimonio Bellver-Hernández. El tribunal expuso que su determinación se fundamentó en el contenido de prueba plenamente admisible que no fue controvertida por el matrimonio Bellver-Hernández, y que acreditó que los acuerdos impugnados se tomaron "dentro de un extenso proceso deliberativo celebrado en una asamblea debidamente convocada".[30] Al abundar, indicó que, de los hechos probados surgía

---

[30] Apéndice de Apelación KLAN202100499, pág. 7022.

que la Asamblea Extraordinaria del 16 de mayo de 2017, no adolecía de defecto legal alguno que ameritara la anulación del proceso y sus resultados, toda vez que, según se acreditó, los Bellver-Hernández tuvieron amplia oportunidad de participar y exponer su argumentos, ello por sí y a través de su asesora y arquitecta. Igualmente, el tribunal indicó que la Asamblea contó con el quórum de participación requerido y que, los acuerdos allí resueltos, fueron notificados conforme a ley y reglamento.

Al continuar exponiendo su determinación sobre los procesos dirigidos en la Asamblea en disputa, el Tribunal de Primera Instancia indicó que, tal cual planteado por el Consejo, este constituía la autoridad suprema en la administración del Condominio, con facultades, incluso, para impartir directrices a la Junta de Directores. Expresó que, toda vez ello, los Bellver-Hernández estaban impedidos de descansar en el hecho de que la Junta de Directores y el Comité de Arquitectura habían autorizado su proyecto, toda vez que ninguno de dichos cuerpos ostentaba el poder de tomar decisiones de tal transcendencia en el inmueble. El foro sentenciador también concluyó que, según lo establecido por la prueba, y distinto a los argumentos de los Bellver-Hernández, los acuerdos alcanzados en la Asamblea Extraordinaria del 16 de mayo de 2017 no fueron producto de actuaciones caprichosas y represivas en su contra. En dicho contexto, el Adjudicador señaló que se demostró que las oposiciones a las propuestas del matrimonio Bellver-Hernández eran fundamentadas y razonables, hecho que impedía que las mismas se tomaran por no puestas, tal cual lo provisto en el Artículo 38C de la Ley de Condominios, *supra.*

Ahora bien, en su *Sentencia,* el Tribunal de Primera Instancia indicó que, con independencia de lo que el Consejo hubiera determinado sobre los méritos de las propuestas por los Bellver-Hernández, la controversia referente a si estos tenían derecho a: (1)

demoler las paredes comunales; (2) instalar condensadoras de aire acondicionado; (3) instalar un portón perforado de color blanco; (4) realizar huecos en paredes comunales para instalar siete rejillas para ventilación; (5) conectar el apartamiento comercial al generador eléctrico comunal; (6) en la alternativa, que se le provea una facilidad comunal para instalar un generador eléctrico, ya había sido adjudicada de forma final y firme, tanto por los tribunales primarios como por este Tribunal de Apelaciones. Al respecto, expuso como sigue.

> […] En particular, ya se habían desestimado las causas de acción referentes a la solicitud de Sentencia para que se declarara 'que la demolición de dos paredes, y la instalación de un portón y 5 *air louvers* no debían someterse para la aprobación del Consejo de Titulares', así como la solicitud de Sentencia para que se declarara que la parte demandante tenía 'derecho a conectarse a las instalaciones comunales del Condominio'. Por lo tanto, resulta improcedente reexaminar en esta etapa si la parte demandante tenía derecho a lo que solicitó en la Asamblea del 16 de mayo de 2017 bajo el fundamento de que así lo requeriría la escritura matriz, los planos o el reglamento del Condominio Quantum Metrocenter".[31]

A lo anterior, el tribunal primario añadió que era un hecho incontrovertido que el matrimonio Bellver-Hernández demolió y perforó elementos comunes del Condominio sin contar con la anuencia del Consejo de Titulares, así como que adquirió la unidad en disputa luego de haberla inspeccionado y de mostrarse conforme con la misma. Así, sostuvo que ello, unido a su determinación en cuanto a no intervenir sobre un asunto ya adjudicado, era suficiente para sostener que los acuerdos alcanzados en la Asamblea Extraordinaria del 16 de mayo de 2017 no eran contrarios a ley. Así, declaró *Ha Lugar Solicitud de Sentencia Sumaria Parcial* presentada por el Consejo, a los únicos fines de desestimar las causas de acción quinta y séptima de la *Segunda Demanda Enmendada* presentada por el matrimonio Bellver-Hernández, relacionadas a la

---

[31] Apéndice de Apelación KLAN202100499, pág. 7023-7024.

impugnación de los acuerdos de la Asamblea. En consecuencia, ordenó la restitución de los elementos comunes alterados a su estado original.

Por su parte, el Tribunal de Primera Instancia se expresó en torno a los méritos de la cuarta causa de acción de la *Segunda Demanda Enmendada* de los Bellver-Hernández, a saber, la petición de conexión del apartamiento comercial a la cisterna comunal del Condominio. En cuanto a ello, determinó que, a pesar de que, mediante la *Sentencia* emitida por este Foro el 4 de abril de 2019 en el KLAN201801326, y en una vista de desacato ulterior, se ordenó al Consejo a entender sobre dicho asunto en la asamblea más próxima, nada acreditaba el cumplimiento debido. Toda vez ello, declaró *Ha Lugar* la *Oposición de Sentencia Sumaria Parcial* y *Solicitud de Sentencia Sumaria a Favor de los Demandantes* presentada por los Bellver-Hernández y, a esos fines, ordenó a que se sometiera ante la consideración del Consejo la solicitud referente a la conexión de la unidad a la cisterna del Condominio.

De otro lado, el foro *a quo* declaró *No Ha Lugar* las solicitudes de los comparecientes en cuanto a sus respectivas peticiones para que se determinara la temeridad, de una o de la otra, y se impusiera el correspondiente pago por concepto de honorarios de abogado y gastos del pleito a favor de la parte contraria. A fin se sostener dicha determinación, el tribunal indicó que, si bien era una conclusión irrebatible que las obras de demolición en controversia fueron ilegales por no haber contado con la aprobación del Consejo, algunos miembros de los organismos oficiales del Condominio, en cierta forma, toleraron las mismas. Así, el tribunal de instancia dispuso que, dado a que ambas partes prevalecieron en algunos aspectos del caso, no procedía resolver que alguna de las partes incurrió en temeridad para propósito de imponer el pago de

honorarios de abogado o costas a tenor con la normativa procesal aplicable y con la Ley de Condominios, *supra.*

Finalmente, en su *Sentencia,* el Tribunal de Primera Instancia declaró *Ha Lugar* la *Solicitud de Desestimación Parcial de la Séptima Causa de Acción de la Segunda Demanda Enmendada, re: Asamblea del 14 de marzo de 2017.* Ello, a la luz de lo dispuesto en las Reglas 10.2 y 42.2 de las Reglas de Procedimiento Civil, 32 LPRA Ap. V., R. 10.2 y 42.2. A su vez, denegó la solicitud de desestimación de la reconvención presentada por el matrimonio Bellver-Hernández.

En desacuerdo, ambas partes de epígrafe solicitaron la reconsideración de lo resuelto, pliegos que, respectivamente, fueron denegados.

Inconforme, el 2 de julio de 2021, el Consejo compareció ante nos mediante el recurso de *Apelación* KLAN202100499. En el mismo, expuso los siguientes señalamientos:

> Erró el Honorable Tribunal de Primera Instancia al no coincidir que los Bellver están obligados contractualmente a cumplir con el Reglamento del Condominio Quantum Metro Center cuando no hay discreción para eximirlos del pago de costas, gastos y los honorarios de abogado al incumplir con las normas del Reglamento del Condominio Quantum Metro Center.
>
> Erró el Honorable Tribunal de Instancia al no concluir que los Bellver incurrieron en temeridad, procedía imponer una partida de honorarios bajo el Artículo 42 (e) de la Ley de Condominios y la Regla 44.1 (d) de Procedimiento Civil, 31 LPRA Ap. V, R. 44.1 (d), y procedía la indemnización en daños.

Por su parte, en igual fecha, el matrimonio Bellver-Hernández presentó el recurso de *Apelación* KLAN202100502 y planteó lo siguiente:

> Erró el TPI al concluir que la transcripción es admisible.
>
> Erró el TPI al desestimar la impugnación de la Asamblea del 16 de mayo de 2017.
>
> Erró el TPI al desestimar por academicidad la impugnación de la Asamblea del 14 de marzo de 2017.

Mediante *Resolución* del 3 de agosto de 2021, este Tribunal ordenó la consolidación de los recursos de epígrafe.

Habiendo entendido sobre los voluminosos expedientes que nos ocupan y con el beneficio de la comparecencia de ambas partes, procedemos a expresarnos.

**II**

**A**

La Regla 36.1 de las de Procedimiento Civil, 32 LPRA Ap. V, R. 36.1, permite a una parte que solicite un remedio presentar una moción para que se dicte sentencia sumaria a su favor sobre la totalidad o cualquier parte de esta. Así, el tribunal podrá dictar sentencia sumaria parcial para resolver cualquier controversia que sea separable de las controversias restantes. 32 LPRA Ap. V, R. 36.3; *Camaleglo v. Dorado Wings, Inc.*, 118 DPR 20, 25 (1986). Este mecanismo procesal es un remedio de carácter extraordinario y discrecional. Su fin es favorecer la más pronta y justa solución de un pleito que carece de controversias genuinas sobre los hechos materiales y esenciales de la causa que trate. *Segarra Rivera v. Int'l Shipping et al*, 208 DPR 964, 979 (2022); *Rodríguez García v. UCA*, 200 DPR 929, 940 (2018); *Roldán Flores v. M. Cuebas et al.,* 199 DPR 664,676 (2018). Un hecho material es "aquel que puede alterar el resultado de la reclamación de acuerdo al derecho aplicable." *Segarra Rivera v. Int'l Shipping et al*, supra, pág. 980. De este modo, y debido a la ausencia de criterios que indiquen la existencia de una disputa real en el asunto, el juzgador de hechos puede disponer del mismo sin la necesidad de celebrar un juicio en su fondo. *Universal Insurance Company y otro v. Estado Libre Asociado de Puerto Rico y Otros,* 2023 TSPR 24, 211 DPR __ (2023); *León Torres v. Rivera Lebrón,* 204 DPR 20, 41(2020); *Luan Invest. Corp. v. Rexach Const. Co.,* 152 DPR 652, 665(2000).

La doctrina considera que el uso apropiado de este recurso contribuye a descongestionar los calendarios judiciales y fomenta así los principios de celeridad y economía procesal que gobiernan nuestro ordenamiento jurídico. *Segarra Rivera v. Int'l Shipping et al*, supra, págs. 979-980*; Vera v. Dr. Bravo*, 161 DPR 308, 331-332 (2004). Por tanto, la sentencia sumaria permite la pronta adjudicación de las controversias cuando una audiencia formal resulta en una dilación innecesaria de la tarea judicial. Así pues, esta solo debe ser utilizada en casos claros, cuando el tribunal tenga ante sí la verdad de todos los hechos esenciales alegados en la demanda y falte solo disponer de las controversias de derecho existentes. *Roldán Flores v. M. Cuebas et al.,* supra, pág. 676; *Vera v. Dr. Bravo,* supra, pág. 334; *PFZ Props., Inc. v. Gen. Acc. Ins. Co.,* 136 DPR 881, 911-912 (1994).

En lo pertinente, el ordenamiento jurídico ha reconocido que, como norma, el uso del mecanismo procesal de la sentencia sumaria para disponer de algún asunto es limitado cuando, entre otros, el mismo contiene elementos de carácter subjetivo, de intención o de propósitos mentales. *Segarra Rivera v. Int'l Shipping et al,* 980*,* supra. Sin embargo, aun cuando tales aspectos sean parte de la causa sometida a la consideración del juzgador de hechos, la doctrina valida la práctica de disponer de la misma por la vía sumaria cuando, de un examen de las particularidades del caso, surge que no existe controversia de los hechos materiales del mismo. *Íd*; *Ramos Pérez v. Univisión,* 178 DPR 200 (2010).

Al evaluar la solicitud de sentencia sumaria, el tribunal debe cerciorarse de la total inexistencia de una genuina controversia de hechos. *Rodríguez García v. UCA,* supra; *Roig Com. Bank v. Rosario Cirino,* 126 DPR 613,617 (1990). Lo anterior responde a que todo litigante tiene derecho a un juicio en su fondo cuando existe la más mínima duda sobre la certeza de los hechos materiales y esenciales

de la reclamación que se atienda. *Sucn. Maldonado v. Sucn. Maldonado,* 166 DPR 154, 184 (2005). Por ese motivo, previo a utilizar dicho mecanismo, el tribunal deberá analizar los documentos que acompañan la correspondiente solicitud junto con aquellos sometidos por la parte que se opone a la misma y los otros documentos que obren en el expediente del tribunal. Iguales criterios debe considerar un tribunal apelativo al ejercer su función revisora respecto a la evaluación de un dictamen del Tribunal de Primera Instancia emitido sumariamente. *Segarra Rivera v. Int'l Shipping et al,* supra, 981-982; *Meléndez González et al. v. M. Cuebas,* 193 DPR 100, 114 (2015); *Vera v. Dr Bravo,* supra, pág. 334.

**B**

Por su parte, el régimen de propiedad horizontal es una institución jurídica *sui generis*, consistente en el dominio exclusivo de una unidad inmueble que "coexiste con un condominio forzoso e inseparable de elementos comunes." *Bravman, González v. Consejo de Titulares,* 183 DPR 827, 844 (2011), citando a *Arce v. Caribbean Home Const. Corp.,* 108 DPR 225 (1978), en la pág. 236. Su principio rector es garantizar a los titulares el disfrute de la propiedad individual. De ahí que, la Ley de Condominios, Ley Núm. 104 de 25 de junio de 1958, sec. 1291 *et seq*, según enmendada[32], reconoce al titular de un apartamiento sometido al régimen de propiedad horizontal, el derecho al pleno disfrute de este y de las áreas comunes, ello sin menoscabo de los derechos ajenos. Así pues, el estado de derecho en esta materia propende a la sana convivencia entre condóminos, mediante la conciliación de los derechos y

---

[32] Advertimos que la Ley Núm. 104, *supra*, quedó derogada mediante la aprobación de la actual Ley de Condominios de Puerto Rico, Ley 129-2020, 31 LPRA § 1921 *et seq*. No obstante, por ser el estatuto vigente al momento de acontecidos los hechos, haremos referencia a los términos de la Ley Núm. 104, *supra*.

prerrogativas involucrados. *Junta de Dir. Cond. Montebello v. Torres,*138 DPR 150 (1995).

Un inmueble solo puede ser sometido al régimen de propiedad horizontal mediante la constitución de una escritura pública, conocida como *escritura matriz,* que debe ser inscrita en el Registro de la Propiedad. *Consejo de Titularles v. Vargas,* 101 DPR 579, 582 (1973). La escritura matriz es una de las fuentes de obligación más importantes para los condóminos y gobierna el régimen, siempre que sus disposiciones no sean contrarias a la ley, la moral o el orden público. Por ello, se ha determinado que la escritura matriz "es una especie de acuerdo privado al cual se adhieren los titulares cuando compran sus respectivos apartamentos" y que forma un estado de derecho que, a su vez, habrá de ser aceptado por los sucesivos titulares en la medida en que se transfiera la titularidad de las unidades sometidas al régimen. *Bravman, González v. Consejo de Titulares*, supra*,* pág. 845. La escritura matriz debe detallar, de manera clara y precisa, la descripción de cada apartamiento. Además, debe precisar el uso y destino de los elementos comunes. 31 LPRA sec. 1291; *Brown III v. J.D. Cond. Playa Grande,* 154 DPR 225, 235 (2001).

Ahora bien, y atinente a lo que nos ocupa, toda vez que los *elementos comunes* de un inmueble circunscrito al régimen de propiedad horizontal pertenecen a todos los titulares en indivisión forzosa, su destino y uso estará sujeto a los cambios que, por unanimidad, acuerden sus dueños. 31 LPRA sec. 1291; *Bravman, González v. Consejo de Titulares,* supra. Los elementos comunes pueden clasificarse como *necesarios* o *voluntarios. Bravman, González v. Consejo de Titulares,* supra, pág. 848*; Consejo de Titulares v. Ramos Vázquez*, supra, pág. 335. Los elementos comunes necesarios, son aquellos indispensables para el disfrute de la propiedad privada de los apartamientos. *Bravman, González v.*

*Consejo de Titulares,* supra, pág. 848. Los mismos están destinados al uso y disfrute de todos los propietarios conforme su destino y no son susceptibles de propiedad individual, toda vez que ello resultaría incompatible con el buen funcionamiento del condominio. 31 LPRA 1291i(a); *Íd.* Por tal razón, el ordenamiento jurídico entiende que, sin ellos, "resultaría inasequible el adecuado disfrute de los apartamientos". *Cestero Aguilar v. Jta. Dir. Condominio,* 184 DPR 1, 12 (2011). Sobre los elementos comunes necesarios, el Artículo 11 de la Ley de Condominios, *supra*, dispone como sigue:

> [...]
>
> (a) Se consideran elementos comunes generales necesarios, no susceptibles de propiedad individual por los titulares y sujetos a un régimen de indivisión forzosa, los siguientes:
>
> [...]
>
> (2) Los cimientos, paredes maestras y de carga, techos, galerías escleras, y vías de entrada y salida o de comunicación.
>
> [...]
>
> (7) Un generador de energía eléctrica que supla la demanda de áreas comunes, o comunes y privadas, haciendo uso de infraestructura eléctrica del condominio, como un elemento común general voluntario. En caso de que se cambie un generador de energía eléctrica que solo supla las áreas comunes a un generador de energía eléctrica que tenga la capacidad de suplir las áreas comunes y las áreas privadas de los apartamientos individuales, no se considerará como una mejora, y requerirá el consentimiento de dos terceras (2/3) partes de los titulares.
>
> (8) Cualquier otro elemento que fuere indispensable para el adecuado disfrute de los apartamientos en el inmueble.
>
> [...].
>
> 31 LPRA sec. 1291i.

Por otra parte, son elementos comunes voluntarios aquellos que no son imprescindibles para el disfrute adecuado de la propiedad individual. En consecuencia, los mismos pueden ser atribuidos a uno o varios titulares en particular. *Cestero Aguilar v.*

*Jta. Dir. Condominio,* supra, pág. 12.    Por tanto, se permite, entonces, la transformación de un elemento común en uno privado con el consentimiento unánime de los titulares. *Bravman, González v. Consejo de Titulares,* supra, pág. 849.

**C**

De otro lado, en el régimen de propiedad horizontal, "[e]l titular individual es responsable, principalmente de su propio apartamento, que le pertenece privativamente como cualquier otra finca sujeta a derechos reales como el de propiedad". *Colón Ortiz v. Asoc. Cond. B.T. I,* 185 DPR 946, 960 (2012). Sin embargo, [e]n cuanto al uso y mantenimiento de los elementos comunes, así como los asuntos generales relacionados con la vida del condominio, la responsabilidad recae sobre toda la comunidad". *Íd.* En la consecución de ello, la Ley de Condominios, *supra,* propone el Consejo de Titulares como el organismo integrado por la totalidad de los titulares individuales, con personalidad jurídica propia, que constituye la autoridad suprema sobre la administración del inmueble. 31 LPRA sec. 1293b; *Colón Ortiz v. Asoc. Cond. B.T. I,* supra.  Así, constituye el cuerpo rector y deliberativo, con dominio sobre las áreas comunes del lugar y limitado solo por lo dispuesto en la Ley de Condominios, la escritura matriz y el reglamento adoptado por el consejo. *Consejo de Titulares v. Gómez Estremera,* 184 DPR 407, 417 (2012); *DACo v. Junta Cond. Sandy Hills,* 169 DPR 586, 594 (2006).

De conformidad con los términos de la Ley de Condominios, *supra,* el Consejo de Titulares deber reunirse, al menos, una vez al año para aprobar los presupuestos y cuentas, y, en otras ocasiones, mediante convocatoria del Presidente de la Junta de Directores.  31 LPRA sec. 1293b-1.  Toda convocatoria debe estar firmada por la persona o personas que convoquen, y habrá de indicar  los asuntos a discutirse, la hora, el día y el lugar de la reunión.  De igual modo,

se hará por escrito, entregándose en el apartamiento perteneciente a cada titular, o por medio de carta certificada, o vía correo electrónico, esto siempre que medie la autorización previa del titular. *Íd.*

Por su parte, las resoluciones y acuerdos del Consejo de Titulares adoptados en asambleas debidamente convocadas y constituidas son de cumplimiento ineludible para todos los titulares, ocupantes o residentes y demás personas que se relacionen con el condominio. 31 LPRA sec. 1293b. No obstante ello, y en lo aquí concerniente, la Ley de Condominios, *supra*, permite la impugnación de los acuerdos tomados por el Consejo. A tales efectos, el Artículo 42 de la Ley de Condominios, *supra*, dispone;

> Los acuerdos del Consejo de Titulares y las determinaciones, omisiones o actuaciones del Director o de la Junta de Directores, del titular que somete el inmueble al régimen que establece esta Ley, durante el período de administración que contempla el Artículo 36-A, del Presidente y del Secretario, concernientes a la administración de inmuebles que no comprendan apartamientos destinados a vivienda o de titulares de apartamientos no residenciales en los condominios en donde exista por lo menos un apartamiento dedicado a vivienda, serán impugnables ante el Tribunal de Primera Instancia por cualquier titular que estimase que el acuerdo, determinación, omisión o actuación en cuestión es gravemente perjudicial para él o para la comunidad de titulares o es contrario a la ley, a la escritura de constitución o al Reglamento a que hace referencia el Artículo 36. [...].

31 LPRA sec. 1293(f).

Ahora bien, el Artículo 38C de la Ley de Condominios, *supra*, expresamente dispone que, toda oposición "a un acuerdo que requiera unanimidad, deberá fundamentarse expresamente, bien en la asamblea o por escrito", sin que la misma se funde en capricho alguno o en la mera invocación del derecho de propiedad, por lo que, "toda oposición infundada, se tendrá por no puesta". 31 LPRA sec. 1293b-3(d).

**D**

Siguiendo lo dispuesto por la Ley de Condominios, *supra*, la Escritura Matriz del Condominio Quantum Metrocenter establece el uso y destino de los elementos comunes del inmueble. Asimismo, en su párrafo diez (10), dispone que el Condominio no contará con elementos comunes limitados.[33] En cuanto a los elementos comunes generales, establece que estos se mantendrán en "indivisión forzosa y no podrán ser objeto de la acción de división de la comunidad".[34] Específicamente, en el inciso cinco (5) del referido párrafo, establece que constituirán elementos comunes generales "]l]a maquinaria de bombeo de agua potable y agua de sistema de riego contra incendio y demás instalaciones para el servicio común de todos los apartamientos, al igual que la cisterna y el generador para casos de emergencia".[35] Más adelante, en la sección intitulada "Disposiciones Requeridas Sobre Energía Eléctrica", la Escritura establece, que el generador eléctrico proveerá servicio a las áreas comunes y a los apartamentos. Esta disposición no provee ningún tipo de distinción entre apartamentos residenciales y apartamentos comerciales.[36] De otro lado, el párrafo veinticinco (25) de la Escritura Matriz establece que todo propietario, ocupante o persona que utilice las instalaciones del Condominio, estará sujeto a la ley, la Escritura Matriz y el Reglamento.[37]

Por su parte, el Reglamento de Administración y Copropiedad del Condominio Quantum Metrocenter, en su preámbulo establece que, "[t]anto el Consejo como la Junta de Directores, deben propiciar, mediante sus acciones, el disfrute de la propiedad privada sobre el apartamiento de cada titular y que la administración de las áreas y haberes comunes del edificio se realiza para lograr el pleno

---

[33] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 663.
[34] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 659.
[35] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 661.
[36] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 789.
[37] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 795.

disfrute de este derecho".[38] Mientras, el Artículo 1.4 del Reglamento, dispone que "[t]odos los titulares presentes y futuros, arrendatarios, o cualquier persona que utilice o visite el edificio, incluidos los empleados, clientes o suplidores, tendrán que atenerse a las normas establecidas por [el] Reglamento y las disposiciones de la Escritura Matriz".[39]

En lo referente a la celebración de Asambleas Extraordinarias, el Artículo 4.5 del Reglamento establece que el Presidente, por sí solo, puede convocar una sesión extraordinaria. Más adelante, el mismo Artículo establece que "bastará con notificar la convocatoria a cada titular en su apartamento, o a Titulares, con 120 horas de anticipación".[40] Dicha convocatoria deberá ser firmada por el Presidente o, en ausencia de este, por el Vicepresidente. Ahora bien, si convoca una mayoría de los directores, todos deberán firmarla.[41] "La comparecencia de un titular a la asamblea, por sí o por apoderado, implica que fue debidamente convocado".[42]

En cuanto al quórum, el Reglamento establece que este se constituirá con una tercera parte de todos los titulares con derecho al voto, por sí o por representante. Ahora bien, el Artículo 4.15 del Reglamento dispone que los titulares que adeuden:

> [T]res (3) o más mensualidades consecutivas de cuotas de mantenimiento o dos (3) mensualidades y un plazo de una derrama o que adeude[n] una tercera parte de una derrama, de cualquiera de sus apartamientos, quedará temporeramente privado del derecho a votar o a decidir sobre cualquier asunto que le competa al Consejo de Titulares, incluidos aquellos que requieran el consentimiento unánime.[43]

**E**

De otro lado, en materia de derecho probatorio, es *prueba de referencia* toda declaración que no sea la que un declarante

---

[38] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 799.
[39] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 800.
[40] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 804.
[41] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 804.
[42] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 804.
[43] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 806.

proponga en el juicio o vista de la que trate y que se ofrece con el propósito de probar la verdad de lo aseverado. Regla 801 (c) de Evidencia, 32 LPRA Ap. VI, R. 801 (c). Como norma, y salvo que otra cosa se disponga por ley, la prueba de referencia es inadmisible en evidencia. 32 LPRA Ap. VI, R. 804. La referida norma de exclusión está predicada en razones de la confiabilidad de la evidencia esperada en el curso de disponer de los hechos adjudicativos en controversia y la violación al derecho de confrontación según consignado en la Constitución de Estados Unidos y la Constitución del Estado Libre Asociado de Puerto Rico. En virtud de esta premisa, la doctrina interpretativa pertinente reconoce que la admisibilidad de prueba de referencia afecta cuatro áreas de vital importancia en la disposición de determinado asunto, a saber: 1) narración precisa del evento de que trate; 2) percepción del evento; 3) recuerdo del evento y; 4) sinceridad del declarante. *Toledo Maldonado v. Cartagena Ortiz,* 132 DPR 249, 259 (1992). Así, a tenor con lo anterior, resulta correcto afirmar que, por lo general, la admisibilidad de prueba de referencia, en lugar de la presentación de un testimonio en corte, conlleva graves implicaciones respecto a la exactitud y valor probatorio de la información que mediante la misma se provee.

Ahora bien, la doctrina antes expuesta no es absoluta. En lo pertinente, la Regla 805 de Evidencia, 32 LPRA Ap. VI, R. 805, permite la admisibilidad de cierta prueba de referencia, aun cuando el declarante esté disponible como testigo, si median determinadas circunstancias que le arroguen suficientes garantías de confiabilidad. Específicamente, la Regla 805 (F), respecto a los *Récords de actividades que se realizan con regularidad*, dispone como sigue:

> Un escrito, informe, récord, memorando o compilación de datos -en cualquier forma- relativo a actos, sucesos, condiciones, opiniones

o diagnósticos que se hayan preparado en o cerca del momento en que éstos sugirieron, por una persona que tiene conocimiento de dichos asuntos, o mediante información transmitida por ésta si dichos récords se efectuaron en el curso de una actividad de negocios realizada con regularidad, y si la preparación de dicho escrito, informe récord, memorando o compilación de datos se hizo en el curso regular de dicha actividad de negocio, según lo demuestre el testimonio de su custodio o de alguna otra persona testigo cualificada, o según se demuestre mediante una certificación que cumpla con las disposiciones de la Regla 902(k) de este apéndice o con algún estatuto que permita dicha certificación, a menos que la fuente de información, el método o las circunstancias de su preparación, inspiren falta de confiabilidad. El término "negocio", según se utiliza en este inciso, incluye, además de negocio propiamente, una actividad gubernamental y todo tipo de institución, asociación, profesión, ocupación y vocación, con o sin fines de lucro.

32 LPRA Ap. VI, R. 805 (F).

La doctrina reconoce que los fundamentos de la referida excepción, "descansan en razones de necesidad, confiabilidad, experiencia y en el carácter rutinario del proceso." *Muñiz Noriega v. Muñoz Bonet,* 177 DPR 967, 985 (2010); *H.R. Stationery, Inc. v. ELA,* 119 DPR 129,137 (1987). Por tanto, el récord cuya admisibilidad se pretenda, debe cumplir con las exigencias establecidas por el ordenamiento, a fin de soslayar la norma general de exclusión.

**F**

De otra parte, como norma, los tribunales solo están llamados a atender asuntos de carácter justiciable. *Amador Roberts et als. v. ELA*, 191 DPR 268, 282 (2014). La doctrina de justiciabilidad exige la adjudicación de casos o controversias genuinas entre partes opuestas, que tienen un interés legítimo en obtener un remedio capaz de afectar sus relaciones jurídicas, permitiendo, así, la intervención oportuna y eficaz de los tribunales. *Asoc. Fotoperiodistas v. Rivera Schatz,* 180 DPR 920, 931 (2011); *López Tirado et al. v. Testigos de Jehová;* 177 DPR 893, 907-908 (2010); *E.L.A. v. Aguayo*, 80 DPR 554, 558-559 (1958). Este

principio constituye una autolimitación al ejercicio del Poder Judicial de arraigo constitucional y persigue el fin de evitar que se obtenga un fallo sobre una controversia inexistente, una determinación de un derecho antes de que el mismo sea reclamado o una sentencia en referencia a un asunto que, al momento de ser emitida, no tendría efectos prácticos sobre la cuestión sometida. *San Gerónimo Caribe Proyect v. A.R.PE.*, 174 DPR 640, 652 (2008); *E.L.A. v. Aguayo*, supra, 584. Así pues, el ejercicio válido del poder judicial sólo se justifica si media la existencia de una controversia real y sustancial. *Ortiz v. Panel F.E.I.*, 155 DPR 219, 251 (2001).

En virtud de lo anterior, se reconoce la doctrina de la academicidad como una vertiente del principio de justiciabilidad. *Crespo v. Cintrón*, 159 DPR 290, 298 (2003). Como norma, un caso es académico "cuando ocurren cambios durante el trámite judicial de una controversia particular que hacen que ésta pierda su actualidad, de modo que el remedio que pueda dictar el tribunal no ha de llegar a tener efecto real alguno en cuanto a esa controversia." *C.E.E. v. Depto. de Estado*, 134 DPR 927, 935 (1993). De esta forma, los cambios fácticos acaecidos durante el cauce de determinado caso que tornen en ficticia su solución tienen el efecto de privar de jurisdicción al foro judicial. *Super Asphalt v. AFI y otro*, 206 DPR 803, 816 (2021). Por tanto, para que se pueda evaluar los méritos del caso, la controversia debe estar viva aun en las etapas de apelación o revisión. *RBR Const., S.E. v. A.C.*, 149 DPR 836 (1999). Ante ello, es preciso concluir que el propósito de esta norma es evitar el uso inadecuado de los recursos judiciales y obviar la creación de precedentes innecesarios. *P.N.P. v. Carrasquillo*, 166 DPR 70, 75 (2005).

**G**

Finalmente, la *temeridad* constituye aquel patrón de conducta que lleva a una de las partes a incurrir en los gastos de un litigio

cuya controversia pudo haberse resuelto fuera de los tribunales y que afecta la sana administración de la justicia. *Meléndez Vega v. El Vocero de PR,* 189 DPR 123, 2126 (2013); *Blás v. Hosp. Guadalupe,* 146 DPR 267, 335 (1998)*; Torres Ortiz v. ELA,* 136 DPR 556 (1994). Una parte ha incurrido en temeridad cuando está presente alguna de las siguientes circunstancias: 1) contestar una demanda y negar responsabilidad total; 2) defenderse injustificadamente de la acción en su contra; 3) creer que la cantidad reclamada es exagerada y que tal sea el único motivo por el cual se opone a las alegaciones del demandante, pudiendo limitar la controversia a la fijación de la correspondiente cuantía; 4) incurrir en un litigio del cual *prima facie* se desprende su responsabilidad y; 5) negar un hecho cuya veracidad conste. *Blas v. Hosp. Guadalupe,* supra, pág. 335-336*; Fernández v. San Juan Cement Co., Inc.,* 118 DPR 713 (1987).

Una vez un tribunal con competencia determina que se ha incurrido en temeridad, está llamado a imponer, a la parte que así haya actuado, el pago de cierta cantidad de dinero en concepto de *honorarios de abogado. Torres Montalvo v. Gobernador ELA,* 194 DPR 760, 778 (2016). Al respecto, la Regla 44.1 (d) de Procedimiento Civil, 32 LPRA Ap. V, R. 44.1 (d), dispone como sigue:

.     .     .     .     .     .     .     .

> (d) *Honorario de Abogado* - En caso de que cualquier parte o su abogado o abogada haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia al responsable el pago de una suma por concepto de honorarios de abogado que el tribunal entienda correspondan a tal conducta. En caso de que el Estado Libre Asociado de Puerto Rico, sus municipios, agencias o instrumentalidades haya procedido con temeridad o frivolidad, el tribunal deberá imponerle en su sentencia una suma por concepto de honorarios de abogado, excepto en los casos en que esté expresamente exento por ley del pago de honorarios de abogado.

El antedicho estatuto preceptúa en nuestro esquema procesal la intención de establecer una penalidad a un litigante perdidoso que, por su terquedad, obstinación, contumacia e insistencia en una actitud desprovista de fundamentos, obliga a la otra parte, innecesariamente, a asumir las molestias, gastos, trabajo e inconveniencias de un pleito. *SLG González-Figueroa v. SLG et al.,* 209 DPR 138, 148 (2022): *Torres Montalvo v. Gobernador ELA,* supra, pág. 778, citando a *Andamios de PR v. Newport Bonding,* 179 DPR 503, 520 (2010). De ahí que, como regla general, establecida la concurrencia de tal conducta, la condena de honorarios resulta ser imperativa. Así, el juzgador tendrá que adjudicar el monto correspondiente al grado de temeridad desplegado por el actor, ello mediante el ejercicio de su sano juicio. Siendo así, la determinación que en su día emita sólo será objeto de revisión si ha mediado *abuso de discreción* en el ejercicio de su ministerio. *Colón Santos v. Coop. Seg. Múlt. P.R.,* 173 DPR 170, 188 (2008).

Por su parte, el Artículo 42 (e) de la Ley de Condominios, *supra,* también contempla el ámbito de la imposición del pago de honorarios de abogado en caso de una reclamación al amparo de sus términos. Al respecto, reza como sigue:

[…]

(e) El foro de instancia en el que se diluciden las querellas o acciones presentadas por los titulares o por el Consejo de Titulares le impondrá a la parte que hubiese procedido con temeridad el pago de los gastos del pleito o de la querella, así como el pago de una suma razonable por los honorarios de abogados en que realmente hubiese incurrido la parte que obtuvo el remedio solicitado. Sólo mediante la renuncia expresa de la parte vencedora podrá dispensarse a la otra parte del pago de honorarios.

El titular que prevalezca en cualquier reclamación de su querella no tendrá que contribuir a los honorarios o gastos legales en que incurra la Junta o el Consejo de Titulares, ni a la multa que, en su caso, pudiera imponérsele a la parte querellada.

31 LPRA sec. 1293f (e).

De otro lado, apuntamos que, en el contexto particular que atendemos, el Reglamento, en su Artículo 11.10, haciendo referencia directa al contenido de la Escritura Matriz del Condominio, estatuye las prohibiciones a las que quedan sujetos los titulares de las unidades de apartamiento pertinentes. En específico, respecto al uso de las áreas comunes, expresamente dispone que queda prohibido, entre otras restricciones, "cerrar, individualizar o de cualquier forma cambiar la estructura, fachada o el diseño de las áreas comunes". Art. 11.10 B(1)(b), Reglamento. Al respecto, se dispone que el incumplimiento de las normas dispuestas:

> [...] [d]ará lugar a que El Condominio, por conducto de sus organismos oficiales, tome las acciones correctivas, legales y/o judiciales que correspondan en ley contra el titular y/o los ocupantes del inmueble, siendo por cuenta del titular las costas gastos y los honorarios de abogado que tal gestión conlleve. [...] .

Cónsono con lo anterior, el Artículo 12.4 del Reglamento, también estatuye la obligación del pago de gastos y honorarios de abogado a todo titular que promueva acciones frívolas o temerarias en contra del Consejo de Titulares.

### III

En la presente causa consolidada, el matrimonio Bellver-Hernández plantea que erró el Tribunal de Primera Instancia al dictar sentencia sumaria en el caso y, en consecuencia, al sostener la validez de la Asamblea Extraordinaria del 16 de mayo de 2017. En esencia, aduce que la determinación del foro sentenciador se fundamentó en prueba inadmisible en evidencia, hecho que impedía al Juzgador descansar en la misma para acoger la postura del Consejo. A su vez, plantea que, el foro *a quo* incidió al no considerar que la Asamblea en disputa se efectuó en contravención a las disposiciones legales y reglamentarias pertinentes, y que las oposiciones a sus propuestas no estuvieron debidamente fundamentadas, sino que fueron producto de actuaciones

arbitrarias, caprichosas y represivas atribuibles al Consejo. Igualmente, en su recurso, el matrimonio Bellver-Hernández afirma que el tribunal sentenciador erró al desestimar su causa de acción sobre nulidad de la Asamblea del 14 de marzo de 2017, bajo el fundamento de academicidad.

Por su parte, el Consejo alega ante nos que el Tribunal de Primera Instancia erró al no concluir que el matrimonio Bellver-Hernández está obligado al pago de las costas y gastos del pleito, así como a los honorarios de abogado. En apoyo a su afirmación, sostiene que era un hecho establecido que las demoliciones efectuadas por los Bellver-Hernández eran ilegales y violatorias a las disposiciones del Reglamento de Administración y Propiedad del Condominio. En apoyo a su postura, afirma que, en virtud de dicho cuerpo normativo, estos estaban contractualmente obligados a satisfacer las referidas partidas. Así, el Consejo aduce que la imposición de las mismas no era discrecional, sino, mandatoria.

Habiendo examinado los planteamientos de ambas partes de epígrafe, a la luz de la abundante prueba documental que ante nos obra y del derecho aplicable, resolvemos modificar la *Sentencia* apelada y, así, confirmar la misma.

Tras ejercer nuestras funciones revisoras, coincidimos con que, en el presente caso, en efecto concurren las condiciones procesales propias a la eficacia del mecanismo adjudicativo empleado por la sala sentenciadora. Sin embargo, intimamos que, con respecto a ciertos de los asuntos, el Tribunal de Primera Instancia se apartó de la norma que dispone de los hechos debidamente establecidos ante sí. Nos explicamos.

En su primer señalamiento, el matrimonio Bellver-Hernández reputa como prueba de referencia la transcripción de los procesos durante la Asamblea Extraordinaria del 16 de mayo de 2017, según sometida por el Consejo como anejo a su petición de sentencia

sumaria. En particular, aduce que la misma incumple con los criterios pertinentes para validar su admisibilidad en evidencia, así como, también, con aquellos que, por vía de excepción, propenderían para ello. En específico, los Bellver-Hernández sostienen que la admisibilidad de la transcripción en disputa, contrario a lo afirmado por el Consejo, no puede sostenerse en lo dispuesto en la Regla 805 (F) de Evidencia, *supra*, sobre *Récords de actividades que se realizan con regularidad*. En apoyo a su afirmación, expresan que la misma se preparó exclusivamente para propósitos del litigio de autos, y no como parte del curso ordinario de la actividad relacionada a las funciones arrogadas al Consejo.

Al entender sobre el referido señalamiento, pudimos advertir que, en efecto, nada en el expediente de autos acredita que el Consejo tuviera como práctica ordinaria de sus actividades realizar transcripciones de las asambleas de titulares. Si bien surge que, para autenticar la transcripción en controversia, el Consejo acompañó la misma con una certificación y una declaración jurada suscrita por el Presidente de la Junta de Directores, acreditando el alegado cumplimiento de los requisitos estatuidos en la Regla 805 (F) de Evidencia, *supra*, así como en la Regla 902 (K) de dicho cuerpo normativo, 32 LPRA Ap. V, R. 902 (K), la prueba no sostiene que la regularidad de la preparación de transcripciones. Distinto es el caso de las minutas y las actas de reuniones y asambleas, respecto a los cuales, de acuerdo con la evidencia que obra ante nos, el Consejo tenía como rutina administrativa preparar. [44] En consecuencia, por no concurrir los criterios probatorios pertinentes, el Tribunal de Primera Instancia erró al admitir en evidencia la Transcripción de la Asamblea Extraordinaria del 16 de mayo de 2017.

---

[44] Apéndice de Apelación Enmendado KLAN202100502, págs. 900, 909, 960.

No obstante ello, aclaramos que lo anterior no incide sobre la validez de la Asamblea en disputa. Aun cuando la transcripción de referencia no debió haber constituido prueba en contra del matrimonio Bellver-Hernández, evidencia adicional en el expediente avala la disposición sumaria del presente caso. Al examinar la evidencia que sustenta la solicitud de sentencia sumaria del Consejo, pudimos advertir la existencia de múltiples documentos admisibles, no controvertidos, que acreditan los trámites previos, coetáneos y posteriores a la Asamblea Extraordinaria, los cuales derrotan los argumentos de índole procesal planteados por el matrimonio Bellver-Hernández.[45] En específico, surge que: (1) la convocatoria de la Asamblea Extraordinaria del 16 de mayo de 2017, se envió mediante correo electrónico, el 5 de mayo de 2017, entiéndase, a diez (10) días, o 240 horas, previo a la celebración de la Asamblea, ello con expresión de los asuntos a dilucidarse;[46] (2) sesenta (60) titulares asistieron a la Asamblea, esto es, se excedió el quórum necesario de 1/3 de los titulares con derecho al voto;[47] (3) los acuerdos se notificaron oportunamente, el 1 de junio de 2017, mediante carta certificada por la secretaria de la Junta de Directores y expresamente se hizo constar el resultado de los acuerdos alcanzados, ello en referencia directa a los asuntos objeto de discusión.[48] Resulta menester destacar que es un hecho indefectible el que el matrimonio Bellver-Hernández asistió a la Asamblea, acto que contradice sus argumentos en contra de la eficacia de la convocatoria pertinente. Ello así, puesto que, de conformidad con

---

[45] Véase Acta Asamblea de mayo de 2017; Lista de Asistencia de Asamblea de 16 de mayo de 2017; Notificación de Acuerdos Asamblea Ordinaria 2017, Apéndice de Apelación KLAN202100502, págs. 977 – 1017.

[46] El Reglamento requiere que se efectúe, por lo menos, 120 horas previo a la celebración de la Asamblea Extraordinaria. Véase Apéndice de *Apelación* Enmendado KLAN202100502, pág. 804.

[47] Al momento de la Asamblea Extraordinaria, el total de titulares con derecho al voto era 143, ya que 13 de los 156 titulares del Condominio se encontraban morosos y, por ende, sin derecho al voto. Asistieron sesenta (60) titulares. Véase Apéndice de *Apelación* Enmendado KLAN202100502, págs. 994-1007.

[48] Apéndice de *Apelación* Enmendado KLAN202100502, pág. 1013.

la Regla 4.8 del Reglamento, la asistencia de un titular a una asamblea extraordinaria, por sí, o por proxi, implica su conformidad con la convocatoria de que trate. Siendo de este modo, su contención respecto a la eficacia de la convocatoria de la Asamblea Extraordinaria del 16 de mayo de 2017 nos parece inoficiosa.

Por su parte, y en el contexto procesal aquí en discusión, a fin de sostener que la Asamblea Extraordinaria de referencia se apartó de las disposiciones de ley y reglamento aplicables, el matrimonio Bellver-Hernández añade que la denegatoria a sus propuestas resultó de actuaciones arbitrarias, caprichosas y represivas atribuibles al Consejo. En esencia, indicó que el Consejo predispuso a los titulares en su contra, hecho que redundó en que ninguno avalara su proyecto. A su vez, sostiene que ninguna de las oposiciones estuvo adecuadamente fundamentada. Sin embargo, nada en la prueba que hemos examinado, sustenta sus alegaciones, por lo que su postura carece de apoyo fáctico para derrotar la corrección de lo resuelto. Por el contrario, lo que acredita la prueba documental que obra ante nuestras funciones revisoras, es la expresa admisión de los Bellver-Hernández en cuanto a haber demolido y alterado elementos comunes generales del Condominio, sin el consentimiento del Consejo de Titulares, única entidad con facultad para autorizar la disposición de los mismos. A su vez, también surge el hecho de que, durante la Asamblea, pudieron exponer, por sí y a través de su arquitecta, el alcance de su proyecto, el cual, conforme se estableció, quedó derrotado por votación mayoritaria de los presentes. Siendo de este modo, y en clara ausencia de evidencia respecto a la conducta imputada al Consejo por el matrimonio Bellver-Hernández, ninguna causa ilegítima medió durante el proceso deliberativo llevado a cabo en la Asamblea.

Ahora bien, en cuanto a si los Bellver-Hernández, tenían, o no derecho a prevalecer en los méritos de la impugnación que

promovieron respecto a los acuerdos tomados en la Asamblea Extraordinaria del 16 de mayo de 2017, diferimos del Tribunal de Primera Instancia en cuanto a la aplicación de la doctrina de *cosa juzgada.* Del abundante trámite procesal del caso, no surge que, en momento alguno se haya pasado juicio sobre la legalidad de los acuerdos en disputa, médula sustantiva en la reclamación del matrimonio Bellver-Hernández. Por tanto, no existe dictamen anterior alguno que pueda ser oponible al asunto cuya consideración se sometió al escrutinio del foro primario. En específico, los Bellver-Hernández cuestionaron la legitimidad del rechazo a sus propuestas de construcción, así como, también, de la negativa de proveer a su unidad de apartamiento acceso al generador eléctrico comunal. Ante ello, el foro primario venía llamado a aplicar los fundamentos legales pertinentes a los hechos relacionados, de modo que el matrimonio Bellver-Hernández obtuviera un pronunciamiento sustentado en el derecho y la prueba. Recordemos que tal cual esbozáramos, en virtud del Artículo 42 de la Ley de Condominios, *supra,* el Tribunal de Primera Instancia tiene jurisdicción para considerar si los acuerdos alcanzados por un Consejo de Titulares, luego de celebrada una asamblea legítima, son contrarios a la ley.

En este contexto, sobre si, en efecto, los Bellver-Hernández estaban facultados para perforar las paredes comunales e instalar las rejillas de ventilación, los conductos de aire y el portón propuestos, no podemos sino resolver en la negativa. Tal cual expresáramos, la prueba documental acredita que estos no contaban con la anuencia necesaria para obrar de conformidad, por lo que, disponiéndose por ley las pautas a dicha actuación, y toda vez que los Bellver-Hernández admitieron haber transgredidos las mismas, solo resta disponer que ningún derecho le asiste al

respecto. Ahora bien, tal no es nuestro parecer en cuanto a la denegatoria de la solicitud de conexión al generador eléctrico.

Tanto la Ley de Condominios, *supra*, en su Artículo 11(a)7), 31 LPRA sec. 1291i, como la Escritura Matriz del Condominio, son claras al establecer el generador eléctrico como un elemento común general, con acceso garantizado a todos los apartamientos, sujeto a indivisión forzosa.[49] Particularmente, la Escritura expresamente indica que, tanto la cisterna, como el generador eléctrico, son elementos comunes al servicio de los titulares.[50] Al proseguir, también indica que el Condominio "no contará con elementos comunes limitados".[51] Por tanto, ante ello, el rechazo del Consejo de la solicitud del matrimonio Bellver-Hernández para conectar el apartamento comercial al generador eléctrico es contrario a derecho y, por consiguiente, nulo, hecho que debió haber decretado el tribunal sentenciador. Así pues, compete, entonces, que modifiquemos lo resuelto respecto a la impugnación de la Asamblea Extraordinaria del 16 de mayo de 2017, a los fines de ordenar que se permita la conexión del apartamento comercial al generador eléctrico del Condominio.

De otro lado, en su recurso de apelación, el matrimonio Bellver-Hernández también arguye que el Tribunal de Primera Instancia erró al desestimar, bajo el fundamento de academicidad, la impugnación que promovió en su séptima causa de acción, ello en cuanto a la Asamblea efectuada el 14 de marzo de 2017. En concreto, plantea que, a diferencia de los titulares de otra unidad de apartamiento, cuya remodelación se autorizó luego de que, en dicha reunión, expusieran el alcance de la misma, no se le permitió

---

[49] Apéndice de Apelación Enmendado KLAN202100499, *Escritura Matriz del Condominio Quantum Metrocenter,* pág. 659.
[50] Apéndice de Apelación Enmendado KLAN202100499, Escritura Matriz del Condominio Quantum Metrocenter, págs. 660-661.
[51] Apéndice de Apelación Enmendado KLAN202100499, Escritura Matriz del Condominio Quantum Metrocenter, pág. 663.

presentar sus propuestas de construcción. Sin embargo, coincidimos plenamente con lo resuelto por el foro de origen en cuanto a que su reclamo es académico. Toda vez que, en la Asamblea Extraordinaria del 16 de mayo de 2017, los Bellver-Hernández expusieron ante el Consejo de Titulares los pormenores de su proyecto, ninguna afrenta a sus derechos converge. Por tanto, en ausencia de una controversia justiciable al respecto, sostenemos la determinación pertinente.

Por su parte, en su recurso, el Consejo apela a nuestro criterio revisor, alegando que el Tribunal de Primera Instancia incidió al no concluir que el matrimonio Bellver-Hernández está obligado contractualmente al pago de costas, gastos y honorarios, así como al no decretar su temeridad. A fin de prevalecer, arguye que las remodelaciones y demoliciones hechas por los Bellver-Hernández, según probadas y admitidas, constituyeron actos violatorios al Reglamento y a la Escritura Matriz. A tenor con ello, indica que se vio obligado a reclamar judicialmente los daños derivados de la conducta ilegal desplegada, a fin de que el matrimonio Bellver-Hernández restituyera los elementos comunes afectados a su estado original.[52] Sobre dicho particular, añade que, el Reglamento aplicable, expresamente reconoce su derecho a recobrar los gastos y honorarios de abogado pertinentes a una reclamación en contra de los titulares que incumplan con sus términos. Al amparo de ello, sostiene que, a diferencia del pago de honorarios de abogado, según lo contemplado en la Regla 44.1 de Procedimiento Civil, *supra*, la obligación estatuida en el Reglamento es una de naturaleza contractual a la cual los Bellver-Hernández estaban sujetos.

De la *Sentencia* apelada surge que el Juzgador denegó la concesión del pago de costas, gastos y honorarios, bajo el

---

[52] Véase Apéndice de Apelación Enmendado KLAN202100499, *Reconvención*, pág. 343.

fundamento de que el Consejo y otras entidades oficiales en el Condominio, toleraron, en cierto modo, las actuaciones del matrimonio Bellver-Hernández. A su vez, dispuso que, dado a que ambas partes en el pleito resultaron, en alguna forma, favorecidas, la imposición de las partidas en disputa no encontraba apoyo en lo dispuesto en las Reglas de Procedimiento Civil, ni en la Ley de Condominios, *supra.*

Siendo la determinación de temeridad, una inherente al ámbito de la discreción que le asiste al tribunal adjudicador en el ejercicio de las facultades que le asisten, resolvemos que no resulta correcto imponer nuestro criterio sobre el ejercido por el Juzgador. Por tanto, en ausencia de un decreto de temeridad, ninguna obligación puede imponerse al matrimonio Bellver-Hernández al amparo de lo dispuesto en nuestro ordenamiento procesal, ni a tenor con los términos del estatuto rector en la materia que atendemos. A igual conclusión llegamos en cuanto a la aplicación de los términos del Reglamento.

Este Tribunal no tiene duda alguna de que los Bellver-Hernández incumplieron con los términos de la Escritura Matriz y el Reglamento del Condominio al demoler paredes y modificar elementos comunes sin el aval del Consejo y con pleno conocimiento de la ilicitud de sus actos. Sin embargo, a la luz de lo aquí resuelto, intimamos que, proveer para la ejecución de los términos del Reglamento, ello a los fines de que los Bellver-Hernández satisfagan los honorarios y gastos del pleito, atenta con los principios cardinales que rigen en materia contractual. Si bien estos estaban sujetos a los términos del Reglamento y de la Escritura Matriz, y, con ello, a las sanciones allí contenidas en caso de incumplimiento, el Consejo, por igual, estaba obligado a observar sus disposiciones. En el caso de autos, resolvimos que el Consejo incumplió con los estatutos privados del Condominio al negar el acceso del

apartamiento comercial a ciertos elementos comunes, en particular, al generador eléctrico. Tanto la Ley de Condominios, *supra,* como el Reglamento y la Escritura Matriz del Condominio, establecen, de manera expresa, que el generador eléctrico constituye un elemento común al cual todos los apartamentos deben tener acceso. Por tanto, al no reconocerse dicha prerrogativa respecto a la unidad en disputa, forzoso es concluir que el Consejo está impedido de exigir el cumplimiento de un contrato que también transgredió. Siendo así, toda vez que, dado a lo anterior, los Bellver-Hernández se vieron forzados a entablar un pleito en contra del Consejo y, este, a su vez, se vio precisado de exigir la restitución de los elementos comunes que estos alteraron, no procede reclamación contractual alguna respecto a la imposición de honorarios de abogado y gastos del pleito.

En mérito de todo lo antes expuesto, modificamos la sentencia apelada, a fin de que se provea para la conexión del apartamiento propiedad del matrimonio Bellver-Hernández al generador eléctrico del Condominio y a los efectos de decretar la inadmisibilidad en evidencia de la transcripción de los Procedimientos de la Asamblea del 16 de mayo de 2017. Por lo demás, el expediente que nos ocupa nos ha permitido constatar que las determinaciones emitidas por el Tribunal de Primera Instancia encuentran completo apoyo legal y fáctico en la abundante prueba documental sometida a nuestro escrutinio. De este modo, por no existir controversia de hechos alguna que amerite el cauce ordinario de los procedimientos, sostenemos, en los términos aquí resueltos, la corrección del pronunciamiento ante nos impugnado.

**IV**

Por los fundamentos que anteceden, se modifica la *Sentencia* apelada y, así, la misma se confirma. Se ordena al Consejo de Titulares compareciente, gestionar la conexión del apartamento

comercial en controversia al generador eléctrico comunal del Condominio.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones